(307 P.3d 262)
No. 108,747

In the Matter of the Estate of KENNETH LEE BUTLER, Deceased.

Opinion filed August 23, 2013.

*Barry D. Martin* and *Jadh J. Kerr*, of Speer & Holliday, LLP, of Olathe, and *Diane D. Durbin*, of Prairie Village, for appellant Judy Butler McHenry, Administrator of the Estate of Leo E. Butler.

*Bruce Hanson*, of Oskaloosa, for appellee Estate of Kenneth Lee Butler, Franklin Burch Administrator.

Before HILL, P.J., POWELL, J., and HEBERT, S.J.

HILL, J.: Leo Butler appeals the district court's denial of his challenge to an order of partial distribution in his deceased son's estate. Leo, who is not an heir, claims he is entitled to more money from the pension settlement received from his son's former employer. The district court ruled that Leo should have appealed the court's order allocating the pension benefits within 30 days of its entry, 4 years earlier, and is now out of time to make such a challenge. We agree. Because Leo did not timely appeal the district court's allocation order he has not filed a timely appeal to this court. We dismiss this appeal as we have no jurisdiction.

*Severance benefits from employment become the subject of an estate controversy.*

Kenneth Lee Butler died intestate on October 21, 2006, in Wyandotte County, Kansas. His adult son, Franklin Burch, was Butler's only heir. In November 2006, Burch received letters of administration from the probate court and began to administer his father's estate.

One of the apparent assets of the estate was a retirement plan. The Colgate-Palmolive Company in Kansas City had employed Butler. As a participant in Colgate's retirement plan, Butler had signed a form designating his plan beneficiaries as his father, Leo, who was to receive 50 percent of the proceeds, and his mother, Jenny Butler, who was to receive 50 percent of the proceeds. At the time of Butler's death, his mother was already deceased but his father was still alive.

Importantly, before Butler's death, Colgate was negotiating a severance program with its employees. In order to exercise an option under the program, Butler was required to sign a general waiver and release form that gave him some options. Butler died before he designated an option. Thus, in March 2007, Colgate sent a letter to Burch, in his capacity as administrator of the estate, stating:

"Had he been actively employed at the time of [Colgate's] Kansas City plant closing in December 2006, [Butler] would have had the following option: (i) to elect his lump sum Personal Retirement Account, which amounts to approximately $127,000, and severance [pay] in the amount of $54,000 (for a total of $182,000), or (ii) to forego his PRA and any severance, and instead elect a lump sum payment of $10,000 per year of service, which, given his 24 years of service, amounts to $240,000. This amount is paid out of the Company's pension plan as an enhanced pension. In order to receive either option, Mr. Butler would have been required to sign a general waiver and release, which, as we discussed, the estate will now execute.

"Mr. Butler's father is named as the beneficiary for pension purposes. Thus, depending on which election is made by Mr. Butler's estate, the Company will disburse the money to the appropriate party (the estate in the case of severance; Mr. Butler's father in the case of pension). Please let me know which option the estate will elect, and we can proceed accordingly."

As the administrator of Butler's estate, Burch sought guidance from the probate court in May 2007. In his petition to the court Burch indicated that under Option I of the program, Leo would receive a lump sum of $127,000 and the estate would receive $54,000 in severance; but Colgate would conversely allow a lump-sum payment of $240,000 under Option II. Burch concluded it was "seeking a Court determination" as to which election to make and how the funds should be allocated between Leo and the estate.

At the hearing on Burch's petition, the probate court confirmed that despite having notice of the hearing, Leo did not appear. After the hearing, the court issued an "Order Determining Allocation of Severance and Pension Benefits of Colgate-Palmolive Company." In its order, after acknowledging the two options given by Colgate-Palmolive the court found that Leo was the named beneficiary of 50 percent of Butler's pension benefits, while Jenny was the named beneficiary of the other 50 percent. The court then found that because Jenny predeceased Butler, her 50 percent share of Butler's pension benefits lapsed to Butler's estate in the absence of any contrary plan provision.

The court ultimately determined Leo was entitled to $63,640.50—which the court said was 50 percent of Butler's pension benefits under Option I of the program. However, the court directed Burch, as the administrator of the estate, to elect Option II of the program. Thus, the estate would receive $240,000 under Option II but pay Leo $63,640.50—leaving the estate a total of $176,359.50.

Nearly 2 months later, on August 27, 2007, Leo filed a motion to set aside the court's June 28, 2007, order allocating Butler's retirement benefits (hereafter referred to as the "allocation order"). Citing K.S.A. 60-260(b)(4) and (b)(6), Leo argued the allocation order should be set aside because:

- the order was void in that it was based on state law as opposed to federal ERISA law;
- Burch failed to follow the proper procedure because he proceeded under state probate law as opposed to federal law;
- the probate court improperly ignored the program administrator's discretion in allocating the benefits; and

- the court's allocation of benefits was inconsistent with the program options.

The court denied Leo's motion. The court found it was uncontroverted that Leo received notice of the hearing on Burch's petition for allocation—but found he chose neither to appear at the hearing nor provide the court with any pleadings or documentation voicing an objection to the court's ultimate findings. The court also found it was uncontroverted that Leo's attorney entered her appearance on Leo's behalf within 30 days of the court's allocation order but the order was not appealed and the motion to set aside was not filed within 30 days of the order.

In response to Leo's objection to the application of state law in allocating the benefits, the court said Leo was confusing the issue of subject matter jurisdiction with choice of law principles. In denying Leo's motion, the court concluded:

"The court, under the circumstances existing in this case, had concurrent jurisdiction with the Federal Court to hear and determine the issues contained herein. The issue of whether the trial court utilized the proper law required by ERISA in making a determination of the allocation of these benefits is one which, if the movant felt aggrieved by, must have been pursued by the movant in an appeal to the Kansas Court of Appeals and is not properly the subject, two months after the order is entered of a motion to set same aside pursuant to K.S.A. 60-260. Again, as argued by the petitioner, K.S.A. 60-260 is not properly utilized in a matter in which there is a specific statutory provision setting forth the time limits within which a notice of appeal must be filed which in this case set out in K.S.A. 60-2103, when the failure to act pursuant to the provisions of this latter statute is voluntary or is the result of negligence."

On May 21, 2008, the court amended some of the language pertaining to its findings of fact but left its legal ruling (as quoted above) intact.

Nearly 4 years later, Burch asked the probate court for a partial distribution of Butler's assets. On April 18, 2012, the court approved the request and ordered a partial distribution of $120,000. Leo appealed that order of partial distribution, the June 28, 2007, allocation order, and all other rulings and orders of the court. Leo acknowledged his appeal was untimely but contended there was

"excusable neglect" in that he did not receive notice of the petition for partial distribution.

The district court denied Leo's motion to appeal out of time on August 14, 2012. The court found that Leo did not receive notice of the court's April 18, 2012, order on the petition for partial distribution. However, in denying Leo's motion, the court held Leo was not an "interested party" to the order of partial distribution. The court reasoned:

"The petitioner is wishing to appeal an order entered by the Court May 21, 2008. That order dealt with the allocation of certain severance and pension benefits of Colgate-Palmolive as and between [Leo] and the Estate of Kenneth Butler. The Court ruled on this matter in 2008, and no appeal was taken from those rulings. [Leo] now maintains that the Order of Partial Distribution begins the appeal time on those rulings. This Court does not agree. A review of K.S.A. 60-2103 persuades this Court that the ruling made by the Court in 2008 was a final order as to the rights of [Leo] and that appeal from those [sic] ruling had to have been filed within 30 days of May 21, 2008. Nothing in the record indicates any excusable reason for delay in doing so and as such [Leo] at this time is beyond the statute as to time for appeal."

Leo argues in this appeal that he is, indeed, an interested party to the order of partial distribution because he is entitled to $240,000 in retirement benefits held by his son's estate. He maintains the June 28, 2007, allocation order is void because the court divided Butler's retirement benefits according to state probate law instead of federal ERISA law. Leo also argues the court divided the retirement benefits in a manner that is contrary to the terms of the plan.

*We must address the issue of our jurisdiction to entertain this appeal.*

In Kansas, the right to appeal is based entirely on statute. Subject to certain exceptions, appellate courts have jurisdiction to entertain an appeal only if the appeal is taken within the time limitations and in the manner prescribed by the applicable statutes. This court has a duty to question jurisdiction on its own initiative, and the court must dismiss an appeal when the record discloses a lack of jurisdiction. *In re T.S.W.*, 294 Kan. 423, 432, 276 P.3d 133 (2012).

As we previously noted, Burch filed a petition for determination and allocation of severance benefits in May 2007. The district court held a hearing on the petition on June 28, 2007. At the hearing, the court confirmed that notice had been made upon Leo but that Leo did not appear. That same day, the court issued the allocation order concluding Leo was entitled to $63,640.50 in retirement benefits.

Nearly 2 months later, Leo moved to set aside the allocation order under K.S.A. 60-260. Leo's chief complaint was that Butler's retirement benefits were allocated according to state probate law as opposed to federal ERISA law. In denying the motion, the court found that Leo had notice of the allocation proceeding and that he failed to respond or appear and that Leo did not appeal the allocation order or file his motion to set the order aside within 30 days of the order. The court said that if Leo felt aggrieved by the application of state law, he must have properly appealed as opposed to moving to set the order aside 2 months later.

In a nutshell, the district court reasoned that Leo should have appealed the court's allocation order and he failed to do so within 30 days of its entry. He cannot resurrect the issue 4 years later when the court makes an order of partial distribution.

We hold the district court was correct. Judge Pro Tem Anne McDonald was appointed as a district judge, not a district magistrate. The applicable probate statute plainly states:

"An appeal [of orders in decedents' estate cases] from the district court to an appellate court taken pursuant to this section shall be taken in the manner provided by chapter 60 of the Kansas Statutes Annotated for other civil cases." K.S.A. 2012 Supp. 59-2401(b).

*Legislative changes to the law of probate appeals are significant in this case.*

Leo maintains the court's allocation order of June 28, 2007, was not appealable. We disagree. Both parties in their arguments misconstrue the effects of the 2006 amendments to this probate code section dealing with appeals.

Except for an amendment made at the time of court unification in Kansas in 1965, K.S.A. 59-2401 had not been substantially

amended by the legislature since its enactment in 1939. It was the statute that controlled all appeals from all types of probate actions such as decedents' estates, adoptions, and care and treatment cases. Prior to the 2006 amendments the law simply stated:

"(a) An appeal may be taken within 30 days from the date of entry of any of the following orders, judgments, decrees and decisions:" K.S.A. 59-2401.

The statute then listed 24 different orders that could be the subject of an appeal. We specifically note an additional subsection because it is pertinent to our reasoning. Subsection (c) of the law, prior to 2006, stated:

"Except as otherwise provided in this section, appeals taken pursuant to this section shall be taken in the manner provided by chapter 60 of the Kansas Statutes Annotated for other civil cases." K.S.A. 59-2401(c).

Then, in 2006, the legislature stripped all references to any probate actions that were not decedents' estates from K.S.A. 59-2401 and placed the laws concerning appeals from those actions in a new statute, K.S.A. 2012 Supp. 59-2401a. See L. 2006, ch. 56, sec. 2. Thus, K.S.A. 2012 Supp. 59-2401 now exclusively deals with appeals in decedents' estate cases. The statute now reads:

"(a) An appeal from a district magistrate judge to a district judge may be taken no later than 30 days from the date of entry of any of the following orders, judgments or decrees in any case involving a decedent's estate:" K.S.A. 2012 Supp. 59-2401.

The statute then lists 21 different orders, judgments, or decrees that could be the subject of an appeal from a magistrate to the district judge. An appeal from a district judge is the subject of the new subsection (b) as we have set out above.

It is fundamental to our system of statutory construction that when the legislature revises an existing law, the court presumes that the legislature intended to change the law that existed prior to the amendment. *State v. Snellings*, 294 Kan. 149, 157, 273 P.3d 739 (2012). The plain wording of the statute conveys its meaning. The legislature designated the list in subsection (a) to pertain only to appeals from magistrates to district judges.

Accordingly, we construe the 21 items found in the laundry list in K.S.A. 2012 Supp. 59-2401(a) apply only to appeals from magistrate judges to district judges.

*We distinguish our opinion from that rendered by another panel.*

Only one case from this court has dealt with this subject, and it was unpublished, *In re Estate of Barfoot*, No. 98,892, 2008 WL 4661911, at *7. (We will refer to this decision as *Barfoot II*. We will discuss *Barfoot I* later.) In *Barfoot II*, the panel acknowledged that the statute had been changed and could be read to mean that the list of 21 items pertained only to appeals to district judges from rulings made by district magistrates, a position we now embrace from our plain reading of the law.

But the *Barfoot II* panel went on and construed the language in subsection (b), an appeal " 'taken pursuant to this section,' " to refer to the list of 21 subjects found in subsection (a). 2008 WL 4661911, at *7. It is with this construction that we disagree. In our view, the language "[a]n appeal . . . taken pursuant to this section" refers to the entire statute K.S.A. 2012 Supp. 59-2401 because of the legislature's enactment of a new section of the probate code, K.S.A. 2012 Supp. 59-2401a which deals with appeals from all other probate actions. The intent is clear; "this section" refers to appeals concerning decedents' estates. K.S.A. 2012 Supp. 59-2401(b).

In addition, the legislature clearly added the subsection (b) language "[a]n appeal taken from the district court to an appellate court" to the existing statute for a reason. The law means what it says: appeals taken from a district court on decedent estate matters must be done according to the directions found in Chapter 60 of our statutes.

Further along this line, we disagree with the *Barfoot II* panel's characterization that the correspondence from the Guardianship and Conservatorship Advisory Committee of the Judicial Council to legislative leaders indicates the proposed changes (2006 S.B. 355) do not intend to change the law regarding appeals from decedents' estates. 2008 WL 4661911, at *5, 8. That correspondence clearly advises that the proposed revision of the existing law was

intended to clarify which sections of the statute applied to appeals from magistrates and that taking appeals from district court decisions would be made according to Article 21 of Chapter 60 of the Kansas Statutes Annotated. We do not rely upon this correspondence in our interpretation but note it in passing as apparent support. We believe the plain reading of the statute is controlling.

Finally, the case in *Barfoot II* differs factually because of the nature of the controversy. In that case, the panel was struggling with *a second appeal* about the enforcement of an *in terrorem* clause—a clause in a will in which a testator imposes upon a devisee or legatee a condition that he or she shall not dispute the provisions of the will or the gift shall be void. *In re Estate of Koch*, 18 Kan. App. 2d 188, 207, 849 P.2d 977, *rev. denied* 253 Kan. 858 (1993).

A prior panel of this court dealt with this *in terrorem* issue in the Barfoot estate in 2005. Working under the prior version of K.S.A. 59-2401, that panel ruled that because of the many opportunities that remained for one or more of the beneficiaries of the will to violate the *in terrorem* clause, the district court's order at that point was considered interim. Thus, the court's order did not fit into one of the 24 subsections of the statute in effect at that time—K.S.A. 2004 Supp. 59-2401(a). *In re Estate of Barfoot*, No. 92,103, 2005 WL 2254456, at *6 (unpublished opinion) (*Barfoot I*).

A will contest can come at any time, from the start of the probate case until the very end, when the court is considering final settlement. In contrast, this case focuses on the district court's allocation of pension benefits, a decision that would be unaffected by any later action by the court.

Finally on this point, the 2008 *Barfoot II* holding is not persuasive to us because the court in *Barfoot II* clearly wanted to put an end to a long, contentious bout of litigation. The *Barfoot II* panel stated:

"Even if we would decide that jurisdiction does not currently exist for this appeal and that it could only be entertained by our granting an intermediate appeal pursuant to K.S.A. 60-2102(c), we would be hard-pressed not to grant such a request in light of an attempt to finally terminate the extensive litigation in this case." 2008 WL 4661911, at *8.

No such history of extensive litigation exists here.

Another case that Leo relies upon is *In re T.S.W.*, 294 Kan. 423, 276 P.3d 133 (2012). In *T.S.W.*, the Supreme Court found that a district court's decision to deviate from the Indian Child Welfare Act for purposes of an adoption was not a final order because the order clearly anticipated further action by the court. 294 Kan. at 433. Although the court order indeed granted the state adoption agency's request to deviate from ICWA's placement preference in an anticipated adoption, the court said the decision "left open the possibility of future action by the district court with respect to T.S.W.'s placement"—since T.S.W. had not yet been actually placed with an adoptive family. 294 Kan. at 433-34. Thus, the court determined the order was not a final order.

*T.S.W.* differs from this case. Here, the allocation order did not leave open the possibility of future action by the court with respect to Leo's interest in the retirement benefits. Although the court would need to take future action in settling the rest of Butler's estate, the court did not leave open the possibility of future action regarding the retirement benefits. Unlike the order in *T.S.W.*, the allocation order demonstrated finality.

Despite its finding that the order in *T.S.W.* was not final, the Supreme Court ultimately applied the collateral order doctrine to exercise jurisdiction over the appeal. It decided the district court's order: (1) conclusively determined the disputed question; (2) resolved an important issue completely separate from the merits of the action; and (3) was effectively unreviewable on appeal from a final judgment. 294 Kan. at 434-35.

One could plausibly argue that we could apply the collateral order doctrine here to decide this case. After all, the allocation order conclusively determined a disputed question—*i.e.*, how Butler's retirement benefits should be divided. Also, the order resolved an important issue that was completely separate from the remaining issues of the probate case, as the allocation of those particular benefits had nothing to do with the settling of the rest of Butler's estate. We decline to apply the doctrine because our Supreme Court noted this doctrine is to be "sparingly" applied and is a "narrow exception" to the final order requirement. 294 Kan. at 434.

We reiterate. The key issue raised by Leo is whether the allocation order was a final order that must have been appealed within 30 days. Leo argues that in estate cases, appealable orders are those listed at K.S.A. 59-2401, and the allocation order does not fit under any category in this list. Leo says the allocation order does not fall under the "catch-all" category set forth at K.S.A. 59-2401(a)(24) because that category only covers "final" orders and the allocation order is not final under Kansas law.

We find that K.S.A. 59-2401(a) does not apply to this case. K.S.A. 2012 Supp. 59-2401(a), which was in effect at the time this case was being decided below, applies when there is an appeal from a district *magistrate* judge to a district judge. Here, Leo was attempting to appeal from the order of a district judge—not a magistrate judge. Thus, Leo's appeal was controlled by K.S.A. 2012 Supp. 59-2401(b)—which provides that an appeal from the district court to an appellate court shall be taken in the manner provided by Chapter 60 of the Kansas Statutes Annotated for civil proceedings.

K.S.A. 2012 Supp. 60-2102(a)(4) provides that the appellate jurisdiction of the Court of Appeals may be invoked by appeal as a matter of right from a final decision in any action, except in an action where a direct appeal to the Supreme Court is required by law. K.S.A. 60-2103 states that when the law permits an appeal from a district court to an appellate court, that appeal must be taken within 30 days from the entry of judgment, except upon a showing of excusable neglect.

In our view, the June 28, 2007, allocation order was a final order. It determined how much pension money would be paid into the estate and how much would be paid to Leo, who was not Butler's heir. Once that determination was made, no future action by the court was required on the subject. A final order has been interpreted as " ' "one which finally decides and disposes of the entire merits of the controversy, and reserves no further questions or directions for the future or further action of the court." ' " *Kansas Medical Mut. Ins. Co. v. Svaty*, 291 Kan. 597, 610, 244 P.3d 642 (2010).

Here, because the allocation order was a final order, Leo was required to appeal that order within 30 days if he wanted to chal-

lenge it. Because Leo did not file an appeal, the district court correctly denied Leo's motion to set the order aside. And when Leo attempted to later appeal the allocation order in a challenge to the order of partial distribution, the district court correctly denied Leo's motion to appeal out of time—ruling Leo was not an interested party to the order. Leo has no interest in the assets remaining in Butler's estate because his interest was finally determined by the allocation order.

Because Leo failed to appeal the allocation order, this court lacks jurisdiction to consider a challenge to that order on the merits. See *T.S.W.*, 294 Kan. at 434. In *T.S.W.*, the court ruled an appellate court lacks statutory authority to hear an appeal where a party failed to appeal from a final order on the matter.

We dismiss this appeal for lack of jurisdiction.